**UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO: 18-**

GSI OF DADE COUNTY, INC.
and
ARIEL I. QUIROS,

    Plaintiffs,

v.

FLIGHTSTAR, INC., d/b/a "FLIGHT DESIGN USA,"
and
THOMAS A. PEGHINY,

    Defendants.
_____/

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
AND DEMAND FOR JURY TRIAL**

Plaintiffs, GSI of Dade County, Inc. ("GSI"), and Ariel Quiros ("Mr. Quiros") (collectively, "Plaintiffs"), sue Defendants, Flightstar, Inc., d/b/a "Flight Design USA" ("Flight Design USA"), and Thomas A. Peghiny ("Peghiny") (collectively "Defendants"), and in support state:

This is an action for breach of contract, unjust enrichment, money had and received, and an equitable accounting based on a Promissory Note entered into between Plaintiff GSI and Defendant Flight Design USA pursuant to which Flight Design USA promised to pay to GSI $325,200.00 plus interest as repayment for a loan in that amount paid by GSI's principal, Mr. Quiros, to Flight Design USA. A copy of the Promissory Note is attached hereto as "**Exhibit A**."

Pursuant to the Promissory Note, payment of $344,712.00 was required to be paid in Florida on January 2, 2016. Plaintiffs demanded payment from Defendants, but Defendants never

paid and, instead, breached their obligations under the Note. This action is brought to recover amounts owed pursuant to the Note, including applicable interest, attorneys' fees, and costs.

## PARTIES

1.  Plaintiff GSI is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

2.  Plaintiff Ariel Quiros is an individual residing in Miami-Dade County, Florida.

3.  Defendant Flight Design USA is a Connecticut corporation with its principal place of business and headquarters in Woodstock, Connecticut. Flight Design USA is registered as Flightstar, Inc., but operates and does business in the name Flight Design USA.

4.  Defendant Thomas A. Peghiny is an individual residing in Mansfield, Connecticut.

## JURISDICTION AND VENUE

5.  This is an action in which the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

    A.  This Court Has Subject Matter and Personal Jurisdiction.

6.  This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to Title 28, United States Code, Section 1332, because there is complete diversity among the parties, as all Plaintiffs are citizens of Florida and the Defendants are citizens of Connecticut, and the amount in controversy exceeds $75,000.

7.  Defendants are subject to personal jurisdiction in this Court pursuant to Section 48.193(1)(g), Florida Statutes, because Defendants breached the contract at issue in this Complaint in Florida by failing to perform acts required by the contract to be performed in this State, as more specifically explained below. Moreover, Defendants have been engaged in continuous and systematic business activities in this State, including entering into a Memorandum of

Understanding and a Distributor Agreement with entities in this State for the purpose of furthering and expanding Defendants' business activities within the State, as explained in greater detail below.

8.  In addition to the acts and contacts described above, Defendants agreed in the Promissory Note at issue to "submit to the non-exclusive jurisdiction of the courts of the state of Florida and of the United States having jurisdiction in Dade County, Florida." Ex. A at p.2.

B.  Venue Is Proper In This District.

9.  Venue is proper in this Court pursuant to Title 28, United States Code, Section 1391(b)(2), because a substantial part of the acts and omissions giving rise to this action, including the promise to pay under the Promissory Note and the breach of that promise, occurred in this District. Venue is also proper pursuant to Title 28, United States Code, Section 1391(b)(3), because Defendant is subject to personal jurisdiction in this District. Finally, Venue is proper because the Promissory Note at issue in this Complaint contains a "Governing Law" clause that expressly provides that Defendant agreed and would not object to Venue in this Court. Ex. A at p. 2.

## FACTS COMMON TO ALL COUNTS

A.  The Flight Design Business.

10.  Defendant Peghiny formed Flightstar in Woodstock, Connecticut, in or about 1993. Flightstar, doing business as "Flight Design, USA," was the importer of Flight Design aircraft. Peghiny is the sole officer and director of Flight Design, USA.

11.  Flight Design aircraft are manufactured by Flight Design GmbH, which is domiciled in Germany. The Flight Design aircraft that are the subject of the Agreement at issue

in this lawsuit are small, single engine, three-axis, high wing light sport aircraft, most commonly used for training and recreational flying.

12. Plaintiff Ariel Quiros, through his wholly owned Florida limited liability corporation, Q Aviation, LLC, entered into and signed a 2012-2013 Distributor Agreement ("Distributor Agreement") on January 18, 2013, with Defendant Flight Design USA. Pursuant to the Distributor Agreement, Q Aviation agreed to act as a distributor of Flight Design aircraft with exclusive distribution rights in the northeast United States.

13. Thomas Peghiny signed the Distributor Agreement on behalf of Flight Design USA, and Mr. Quiros signed on behalf of Q Aviation.

B. <u>Mr. Quiros Forms Flight Design Americas To Purchase Flight Design USA.</u>

14. On December 9, 2013, Mr. Quiros formed Flight Design Americas, Inc. ("FDA"), in Florida for the purpose of acquiring Flight Design USA from Peghiny.

15. Mr. Quiros is the sole officer and director of FDA.

16. Mr. Quiros and Peghiny orally agreed that Mr. Quiros would loan money to Peghiny so that Peghiny could buy back all of the outstanding shares held by shareholders of Flight Design USA before Mr. Quiros acquired Flight Design USA.

17. Pursuant to their agreement, Flight Design USA issued an invoice dated December 26, 2013, to Plaintiff GSI for the amount needed to buy back all outstanding shares of Flight Design USA. A copy of the Invoice is attached hereto as **"Exhibit B."**

18. The Invoice breaks down a total of eleven payments to be made for a total of $325,300. The Invoice also identifies all of the investors in Flight Design USA and how much they will be paid in exchange for their outstanding shares of Flight Design USA.

19. Mr. Quiros accepted the Invoice by writing "OK Confirm" at the bottom and signing it. He also hand wrote on the Invoice: "Please obtain and send back to us confirmation of payments to each investors listed above." Ex. B.

C. Mr. Quiros Loans $325,300.00 To Flight Design USA And Flight Design USA Used The Funds To Buy Back All Outstanding Shares.

20. Pursuant to the agreement between Mr. Quiros and Defendants, and consistent with the Invoice, on December 27, 2013, Mr. Quiros executed a check in the amount of $325,300.00 payable to Flight Design USA. As indicated in the Memo section of the check, the check was intended for "The Purchase of Flight Design." A copy of the check is attached hereto as **"Exhibit C."**

21. Peghiny then deposited the check from Mr. Quiros and used the funds for Flight Design USA to buy back all of Flight Design USA's outstanding shares.

22. In January and February 2014, pursuant to the agreement between Mr. Quiros and Peghiny, acting on behalf of GSI and Flight Design USA, respectively, Flight Design USA, proceeding as Flightstar, Inc., sent a series of letters and release agreements to each of its shareholders along with a check representing the amount of each shareholder's investment in Flightstar.

23. The letters to the shareholders explained that the company, Flightstar, Inc., had an offer, referring to the offer from Mr. Quiros, that allowed it to purchase back 100% of the stock of Flightstar, Inc. and to close the company down. The letters also explained that the investors were receiving a payment equal to 100% of their investments and that acceptance of the payment constitutes a full release of any claim and interest in Flightstar, Inc. Each investor was required to sign the release and return it to Flightstar, Inc., and each one did.

24. As Peghiny worked to locate and buy back all outstanding shares, Flight Design USA and FDA worked on the transition from Flight Design USA to FDA.

D. GSI Enters Into Promissory Note With Flight Design USA.

25. In January 2014, GSI sent a draft Promissory Note to Peghiny regarding the above referenced payment to Flight Design USA.

26. On June 17, 2014, Peghiny signed and notarized the Promissory Note as President of Flight Design USA.

27. The Promissory Note provides that in exchange for borrowing $325,200.00 from GSI, Flight Design USA promised to pay $325,200.00 (the principal sum) plus 3% interest per annum on the principal sum. Ex. A.

28. The Promissory Note also provides that one payment of $344,712.00 (for principal and interest) was due and payable to GSI on January 2, 2016. *Id*. Pursuant to the Note, all principal and interest must be made to GSI in Miami, Florida. *Id*.

29. The Promissory Note further sets forth a default interest rate of 10% per annum on any outstanding amounts. *Id*.

30. The Promissory Note explains that in the event of a default, the outstanding principal balance of the Note together with accrued interest thereon shall, without presentment, demand or notice by the holder, be due and payable. Default is identified in the Note as any one of the following occurrences:

   i. any amount owing under the Note that is not paid when due;
   ii. a default under any other provision of the Note;
   iii. breach of any representation or warranty under the Note or related to the proposed purposes of the Note;

      iv. the liquidation, dissolution, death or incompetence of the undersigned;

      v. any petition of bankruptcy, or

      vi. insolvency or similar law against the undersigned and such petition not being dismissed within a period of thirty (30) days of the filing.

31. In the event the terms of the Note must be enforced or collected, the Note provides that Flight Design USA will pay all expenses of collecting and enforcing the note, including expenses and attorneys' fees, court costs and the cost of appellate proceedings. *Id*.

32. Finally, the Note expressly provides for the application of Florida law in constructing the terms of the Note and that any proceedings involving the Note will be in the courts of this State. *Id*.

33. As indicated above, Flight Design USA failed to repay the amounts owed under the Note as required by the Note's express terms.

34. Peghiny, as the signator and sole officer of Flight Design, USA, is individually liable, along with Flight Design, USA, for payment of the amounts owed under the Note.

35. On June 21, 2018, Plaintiffs sent a demand for payment under the Note, and Flight Design USA failed to pay.

36. All conditions precedent to filing this Complaint have occurred, been satisfied and/or performed by Plaintiffs, or have been waived and/or otherwise been excused.

37. This action is brought within the pertinent statutory limitations period.

38. Plaintiffs have retained the undersigned law firm to represent them in this action and are obligated to pay them reasonable attorneys' fees and costs for their services.

## COUNT I
## BREACH OF CONTRACT (PROMISSORY NOTE)

39. Plaintiffs, Ariel Quiros and GSI, repeat, re-allege, and incorporate by reference the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

40. On or about June 17, 2014, Defendants and Plaintiff GSI entered the Promisory Note (Ex. A) pursuant to which Defendants agreed to repay Plaintiff GSI $344,712.00, inclusive of the principal sum and interest on the principal sum, on or before January 2, 2016. *See* Promissory Note (Ex. A).

41. The Promissory Note is a binding contract.

42. Defendants have breached the contract by failing to make payment of the amounts owed pursuant to the Promissory Note.

43. As a result of Defendants' breach, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, Ariel Quiros and GSI, demand judgment against Defendants, Flight Design, USA and Peghiny, for damages, plus interest, costs, attorneys' fees and such other relief that this Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT
### *(In the Alternative)*

44. Plaintiffs, Ariel Quiros and GSI repeat, re-allege, and incorporate by reference the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

45. Mr. Quiros conferred a benefit on Defendants when Mr. Quiros transferred funds in the amount of $325,300.00 directly to Flight Design, USA as a loan for Defendants to buy back all outstanding shares of Flightstar, Inc.

46. Defendants agreed to repay those funds to Plaintiffs in January 2016.

47. Defendants had knowledge of the benefit they received from Plaintiffs and voluntarily accepted and retained the benefit conferred.

48. Defendants failed to repay the funds as agreed and despite demand for payment.

49. In addition, Defendants knew or should have known that they were not entitled to keep those funds without paying them back as promised.

50. It is inherently unfair and inequitable that Plaintiffs' funds are retained and used to personally benefit Defendants, rather than being returned to Plaintiffs.

51. As a direct and proximate result of Defendants' retention of the $325,300.00 that they borrowed from Plaintiffs, Plaintiffs have incurred damages, and, under the circumstances, equity dictates that Defendants return the funds that were received from Plaintiffs, and any assets acquired with those funds, to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request the Court enter a Judgment:

  a. Declaring Defendants unjustly enriched by virtue of receipt of the funds from Plaintiffs;
  b. Requiring the payment of the funds to Plaintiffs; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;
  c. Awarding Plaintiffs damages, costs, attorneys' fees, and interest; and
  d. Granting such other and further relief as may be just and proper.

## COUNT III
## RESTITUTION/MONEY HAD AND RECEIVED

52. Plaintiffs, Ariel Quiros and GSI, repeat, re-allege, and incorporate by reference the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

53.     Plaintiffs conferred a benefit on the Defendants when Mr. Quiros transferred funds in the amount of $325,300.00 directly to Flight Design, USA as payment for Defendants to use to buy all outstanding shares of Flightstar.

54.     Defendants received the benefit of the funds they received from Plaintiffs and voluntarily accepted and retained the benefit conferred to which Defendants were not entitled.

55.     Equity and good conscience dictate that Defendants should return and repay the funds received and any assets they may have acquired with those funds to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully requests the Court enter a Judgment:

a.  Ordering Defendants to make restitution to Plaintiffs;

b.  Requiring the payment of the $325,300.00 to Plaintiffs; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such funds;

c.  Awarding the Plaintiffs damages, costs, and interest; and

d.  Granting such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 3rd day of August, 2018.

                                        Respectfully submitted,

                                        DAMIAN & VALORI LLP
                                        *Counsel for Plaintiffs*
                                        1000 Brickell Avenue, Suite 1020
                                        Miami, Florida  33131
                                        Telephone:  (305) 371-3960
                                        Facsimile:  (305) 371-3965

                                        */s/ Melissa Damian Visconti*
                                        Melissa Damian Visconti, Esq.
                                        Florida Bar No. 68063
                                        Email:  mvisconti@dvllp.com